UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY BLEVINS, *et al.*, | : | Case No. 1:13-cv-00440 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE PROPERTY & | : | |
| CASUALTY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

**ORDER:**

**(1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 34); AND**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE EVIDENCE ATTACHED TO PLAINTIFFS' MEMORANDUM CONTRA DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 48)**

This civil action is before the Court on Defendant Allstate Property & Casualty Insurance Company's motion for partial summary judgment (Doc. 34) and the parties' responsive memoranda (Docs. 37, 45).  Also before the Court is Defendant's objection to, and motion to strike, evidence attached to Plaintiffs' memorandum contra to Defendant's motion for partial summary judgment (Doc. 48) and Plaintiffs' response (Doc. 49).

I.    **FACTUAL BACKGROUND**

On May 26, 2012, prior to leaving for the Goshen Kroger, Kimberly Blevins placed some clothes in the dryer, located in the utility room, and started it.  Upon her return, she sounded the horn of her automobile to alert her husband, Jeffrey, that she was

back and wanted help carrying in her packages.  As they were bringing in the groceries, the house quickly filled with smoke.  They discovered a fire in the utility room and called "911."  Mr. Blevins and an adult son tried to extinguish the fire with a garden hose in the interim.  The fire was extinguished once emergency crews arrived.  (Doc. 35, Examination Under Oath of Kimberly Blevins[1] at 60-67, 74-75 (PAGEID ##: 604-06, 608).)

Defendant Allstate retained fire investigator Mark Schockman to conduct an "origin and cause" analysis.  (Doc. 33, Exh. A (Deposition of Mark Schockman at 4, 12, 15).)  Among other things, he examined a white plastic laundry basket and noticed that one of its exterior corners, as well as the clothing within it, exhibited heavy fire damage.  He collected a sample of the clothing and submitted it for laboratory analysis.  (*Id*. at 29-31.)  The sample tested positive for the presence of light petroleum distillate, an ignitable liquid.  Falling within this particular class of ignitable liquid is petroleum, ether, some cigarette lighter fluids and some camping fuels.  (*Id*. at 69.)  Schockman also found a plastic container of cigarette lighter fluid on a counter in the bathroom located within the master bedroom.  (*Id*. at 34-35.)  This bathroom is adjacent to the utility room.  (*Id*. at 37.)

Mr. and Mrs. Blevins, as well as their adult son, were questioned under oath as part of Allstate's investigation of the claim.  When asked about the presence of lighter fluid in the home, Mrs. Blevins, the smoker in the family, equivocated.  At first she

---

[1] Mr. and Mrs. Blevins provided testimony prior to the commencement of this litigation pursuant to a provision within their policy allowing for an "Examination Under Oath" in cases where the insurer requires additional information before adjusting its insured's claim. (Doc. 35, Examination Under Oath of Kimberly Blevins at 6-8 (PAGEID #: 591); Doc. 36, Examination Under Oath of Jeffrey Blevins at 6-8 (PAGEID #: 643).)

testified she did not think there was any in the house.  She used a disposable BIC-type lighter versus a Zippo needing lighter fluid.  If lighter fluid was in the house, however, it would have been stored in a kitchen cabinet; "gas, lighter fluid, those kinds of things" were her husband's bailiwick.  When asked outright, Mrs. Blevins stated that she did not "notice" or "recall" seeing a container of lighter fluid in the master bathroom. (Doc. 35 at 72-80 (PAGEID ##: 607-09).)  Her errata sheet corrections, however, stated that she won a $20 scratch-off lottery ticket at a BP gas station a couple of weeks before the fire and used the money to buy a Zippo.  She returned to her car, but then went back inside to buy lighter fluid.  Returning home, she herself did not fill the lighter, but she asked her husband to do so, leaving both items in a bag on the kitchen counter.  (Doc. 35 at 3 (PAGEID #: 631).)  The adult son testified that he could not remember the last time he actually saw lighter fluid in the house, but could picture it only in the kitchen "medicine" cabinet as opposed to in the master bathroom.  (Doc. 32, Examination Under Oath of Dakota Blevins at 33-35 (PAGEID ##: 438-39).)  Mr. Blevins' testimony was much more direct.  He confirmed keeping two containers of lighter fluid in the house, one in the kitchen and one in the master bathroom where he would fill up his wife's Zippo over the sink.  Mr. Blevins stated further that the container observed by Schockman "had probably been there for days."  (Doc. 36, Examination Under Oath of Jeffrey Blevins at 40-43 (PAGEID ##: 651-52).)

     Schockman testified that "[o]riginally we were looking at the possibility – the obvious possibility of a dryer problem." (Doc. 33, Exh. A at 36.)  But, he continued:

> as we excavated the fire scene and started reconstructing it I saw fire patterns, burn patterns that were inconsistent with the dryer fire. And, then, as I began my interviews with them, trying to get a better idea of how this laundry room is laid out, we did the normal conversation that we have with everybody, any flammable liquids, any combustible liquids. You go right down the list. It's a normal list.

(*Id.*)  Schockman ultimately opined that the dryer itself did not cause or contribute to ignition of the fire.  Rather, he concluded that the fire originated within clothing located in said basket that, at the time of the fire, was located either on top of—or directly in front of—the dryer.  Moreover, the only ignition source Schockman could *not* eliminate was an intentional human action.  (*Id*. at 52, 72-77.)

In a letter dated November 15, 2012, Defendant denied Plaintiffs' claim based on evidence "suggesting material information regarding the facts and circumstances of the fire have been concealed and/or misrepresented."  (Doc. 39, Deposition of Joseph Pastor, Exh. 1 at 1 (PAGEID #: 770).)  Plaintiffs were further advised that "the testimony you have provided regarding the facts and circumstances surrounding the fire on May 26, 2012 is inconsistent with the scientific evidence suggesting *human involvement was necessary to ignite the fire*."  (*Id*. (emphasis added).)  Of particular concern to Allstate was the testimony received concerning the presence of cigarette lighter fluid in the home:

> As you are aware, the presence of cigarette lighter fluid . . . was present on the samples of clothing tested following the fire.  Each of you testified inconsistently during your Examinations Under Oath regarding both the purchase of cigarette lighter fluid, as well as the storage of cigarette lighter fluid inside your home. This information was material to our investigation based on the bottle of cigarette lighter fluid found in the bathroom area adjoining the laundry room.

(*Id.* at 2.)

Plaintiffs thereafter filed this cause of action alleging breach of contract and seeking declaratory relief and an award of damages.[2] Plaintiffs' complaint also includes claims of "bad faith" and for "punitive damages" (Doc. 5 at 6-7, ¶¶ 26-29 and ¶¶ 30-31, respectively).  Defendant's motion for partial summary judgment is directed at these latter claims.

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

---

[2] This case originally was filed in the Clermont County Court of Common Pleas, but later removed to this Court by Defendant (*see* Doc. 3).

### III. ANALYSIS

#### A. Motion to Strike

Attached to Plaintiffs' memorandum contra to Defendant's motion for partial summary judgment are the written reports of Stephen Claytor, the expert retained by Plaintiffs after their claim was denied, and of Mark Schockman, the fire investigator retained by Allstate. (Doc. 37 at 11-28 and 29-40, respectively.) Defendant has moved to strike these reports as inadmissible hearsay, noting that no affidavit (presumably attesting to their authenticity) accompanied either one of them.

Plaintiffs respond that they filed the transcripts of the depositions of Clayton and Schockman contemporaneously with their memorandum *contra*, to which these reports were attached as exhibits. Both experts identified and referred to their reports in the course of their depositions, so, as a courtesy to the Court, Plaintiffs attached them to their memorandum. Plaintiffs argue that the rules of evidence require no further authentication. Defendant did not file a reply brief.

Review by the Court confirms that counsel for Plaintiffs filed deposition transcripts for Stephen Claytor and Joseph Pastor, Allstate's claims adjuster, along with the memorandum *contra*. (*See* Docs. 38-44.) Claytor's report is attached to his deposition albeit with no identifying exhibit sticker. Defense counsel began his interrogation regarding said report at page 70 of the transcript. (Doc. 40 at 72 (PAGEID #: 843).) Schockman's report is not attached as an exhibit to Pastor's deposition. Schockman's deposition was filed by defense counsel contemporaneously with the motion for partial summary judgment, and his report was marked as Exhibit A according

6

to the transcript. No exhibits, however, were attached to the transcript filed with the Clerk, and thus the Court cannot verify that the report attached to Plaintiffs' memorandum *contra* is the same one introduced at Schockman's deposition.

It is unclear why Defendant would wish to strike its own expert's report. Upon consideration, however, the Court determines that Defendant's objection, made pursuant to Fed. R. Civ. P. 56(c)(2), is overruled as to the Claytor report but sustained as to the Schockman report. Accordingly, Defendant's motion to strike is denied as to the Claytor report but granted as to the Schockman report. In resolving the motion for partial summary judgment, then, the Court will consider the testimony of Schockman, but not the document attached to Plaintiffs' memorandum contra labeled "Report of Mark Shockman Identified in his Deposition[]" (*see* Doc. 37 at 29-40).

**B. Motion for Partial Summary Judgment**

Ohio law governs the parties' dispute. An insurer has a duty to act in good faith in the processing and payment of the claims of its insured, and a breach of this duty gives rise to a cause of action in tort for "bad faith." *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St. 3d 298, 525 N.E.2d 783. To grant a motion for summary judgment on the issue of bad faith, a court must find—having viewed the evidence in a light most favorable to the insured—that the claim was "fairly debatable" and that the insurer's refusal to pay was premised on a genuine dispute over either the status of the law at the time of denial or the facts that gave rise to the claim. *Tokles & Sons, Inc. v. Midwestern Indem. Co*. (1992), 65 Ohio St. 3d 621, 630, 605 N.E.2d 936, 943, *overruled in part on other grounds by Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St. 3d 552, 554, 644

N.E.2d 397, 399-400.[3] <u>At issue is whether the insurer had "reasonable justification" for refusing the claim.</u> *Zoppo*, 71 Ohio St. 3d at 555, 644 N.E.2d at 400.

In *Zoppo*, the insured owned a restaurant destroyed by fire. The fire was started with kerosene, a liquid accelerant, and was determined to be incendiary in nature. The insurer denied coverage. Concluding that the insured had participated in setting the fire, the insurer was influenced by what it regarded to be material misrepresentations made by the insured concerning his whereabouts on the night of the fire and whether he had additional insurance. A jury found in favor of the insured and awarded punitive damages. On appeal, the Supreme Court of Ohio determined there was ample evidence to support the jury's finding that the insurer was *not* "reasonably justified" in denying the claim. There had been an attempted arson three weeks before the actual fire. Unruly bar patrons, tossed out by the insured, openly boasted that they were responsible for that attempt and would be back "to finish the job." And, after the fire, one of these patrons actually admitted to setting it. Apparently only cursory questions were put to these individuals before the insurer ruled them out as suspects, despite evidence of a break-in and theft. Moreover, the insurer devoted little effort toward verifying the insured's out-of-town alibi or whether he truly had a financial motive to destroy his business. *Id.* at 555-56, 644 N.E.2d at 400.

---

[3] *Tokles* was not mentioned in *Zoppo*, nor was it specifically overruled. *Tokles* had applied an "intent" requirement, then good law by virtue of the Supreme Court of Ohio's ruling in *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St. 3d 690, 590 N.E.2d 1228. However, *Zoppo* specifically overruled *Said*. *Zoppo*, *supra*, 71 Ohio St. 3d 552, 644 N.E.2d 397 (syl. ¶ 1). Nevertheless, *Tokles* also had applied the "fairly debatable" test to determine what was "reasonably justified" in the bad faith context. Since *Zoppo*, state and federal courts (in both the Northern and Southern Districts) continue to cite *Tokles* for this principle, often, as here, in the summary judgment context. *Corbo Properties Ltd. v. Seneca Ins. Co.*, Inc., 771 F. Supp. 2d 877, 880-81 (N.D. Ohio 2011) (collecting cases).

Plaintiffs rely on *Zoppo* to defeat Defendant's motion.  They urge that Allstate's investigation, like the one conducted by Homestead, was "inadequate" and, therefore, it was not "justified" in denying the claim.  *See id.*  Plaintiffs' premise, however, is unavailing.  Defendant denied Plaintiffs' claim based on the "Misrepresentation, Fraud or Concealment" provision in their policy, taking particular issue with inconsistent testimony concerning "both the purchase of cigarette lighter fluid, as well as the storage of cigarette lighter fluid inside [the] home." (Doc. 39, Exh. 1 at 1 (PAGEID #: 770).)  The presence of lighter fluid has significant relevance in light of the findings of Defendant's "origin and cause" expert Schockman.  And the testimony given during the examinations under oath, at which Plaintiffs had the benefit of counsel,[4] was arguably inconsistent.  Mrs. Blevins initially denied use of a Zippo lighter and the presence of lighter fluid in her home.  However, Mr. Blevins confirmed the presence of not one, but two bottles of lighter fluid, one of which sat on the counter behind the sink in the master bathroom.  Adult son Dakota could not picture lighter fluid in the house at the time of the fire, but, if it were present, it would have been stored in a kitchen cabinet.  Then, in an errata sheet submitted not only after her examination under oath, but also her husband's and possibly her adult son's examinations,[5] Mrs. Blevins recalled purchasing a Zippo lighter with her lottery ticket winnings *and* returning inside the store to purchase lighter

---

[4] *See* Docs. 32-1 at 1-3 (PAGEID ##: 430-31), 35 at 1-3 (PAGEID #: 590), and 36 at 1-3 (PAGEID #: 642).

[5] Mrs. Blevins' examination commenced on July 23, 2012 at 9:30 a.m. (Doc. 35 at 1-2 (PAGEID #: 590)), with her husband's following the same day at 12:40 p.m. (Doc. 36 at 1-2 (PAGEID #: 642)).  Dakota Blevins' examination took place on August 9, 2012.  (Doc. 32-1 at 3-4 (PAGEID #: 431).)

fluid with which to fill it, a task she left to her husband. Finally, there is no dispute that the master bathroom sits adjacent to the utility room in which the fire started.

Plaintiffs urge that Schockman "rushed to judgment" (*see* doc. 37 at 4). Per Plaintiffs, had Schockman been as thorough as their "origin and cause" expert Claytor (*see id*. at 6-7), Schockman, too, would have opined that a shorted wire within the dryer was the culprit. This argument, however, is nothing more than an attempt to "blur the lines" between a breach of contract claim and a bad faith one. *Corbo Properties Ltd. v. Seneca Ins. Co., Inc.*, 771 F. Supp. 2d 877, 882 (N.D. Ohio 2011). A plaintiff cannot "save" a bad faith claim by arguing the merits of its breach of contract claim. *Id*. at 884.

In *Corbo*, coverage was denied on the basis of arson, and claims for both breach of contract and bad faith followed. In deciding whether summary judgment should be granted regarding the latter, the court concluded that it must identify the evidence upon which the defendant insurance company relied and determine whether, based on such evidence, the cause of the fire was "fairly debatable." To this end, questions of probative value or weight were not appropriately considered. *Id.* at 883. Thus, whether the evidence of arson was sufficient such that the defendant could *prevail* on such a defense was irrelevant. *Id*. at 884.

The same parameters inform this Court's ruling. Whether the coverage decision (*i.e.*, the breach of contract claim) by Allstate was *correct* is not now before this Court. Rather, at bar is whether any genuine issues of material fact preclude a ruling on whether, as a matter of law, the claim was "fairly debatable". None do. As described, the conclusions of expert Schockman, as well as the conflicting testimony of the Blevins

10

family, are not in dispute, [6] and this Court finds these "facts" adequate to support Defendant's decision that the cause of the fire in the utility room was "fairly debatable." *See Addington v. Allstate Ins. Co.*, 142 Ohio App. 3d 677, 680, 756 N.E.2d 750, 752 (2001) ("an allegation of bad faith made against an insurance carrier for its handling a claim for coverage will survive only if the record shows that there were *no circumstances* in the case which could be viewed as creating a reasonable justification for that carrier's actions[]") (emphasis added); *Abon Ltd. v. Transcontinental Ins. Co.*, No. 2004-CA-0029, 2005 WL 1414486, at *6 (Ohio App. 5 Dist. June 5, 2005) (" reasonable minds could only conclude that [the insurer's] decision was not arbitrary or capricious but was based upon a reasonable justification").

Plaintiffs' disagreement with the outcome notwithstanding, the Court determines that the cause of the fire at the Blevins' residence was "fairly debatable" and that Defendant Allstate's refusal to pay was premised on a genuine dispute over the facts that gave rise to the claim. *Tokles*, 65 Ohio St. 3d at 630, 605 N.E.2d at 943. Accordingly, Defendant is entitled to summary judgment as to Plaintiffs' claim for the tort of "bad faith".

Remaining, then, is Plaintiffs' breach of contract claim and any compensatory damages awardable in connection with that claim. However, punitive damages are

---

[6] Plaintiffs' expert Claytor testified that he used to perform "origin and cause" work for Allstate, but stopped when its adjuster asked him to change his report (on a claim filed nine years earlier) to reflect that the fire loss was a case of arson. That adjuster purportedly was Joseph Pastor, the same adjuster who denied the Blevins' claim. (Doc. 40 at 146-49 (PAGEID ##: 920-23).) Plaintiffs apparently wish the Court to draw the inference that if Pastor once tried to influence Claytor in such a manner, then he may well have done so with Schockman. Yet there is no testimony undermining the integrity (as opposed to sufficiency) of Schockman's report, and thus, under *Corbo*, it was evidence properly relied upon by Defendant.

11

clearly <u>not</u> recoverable on a breach of contract claim. *See Digital & Analog Design Corp. v. North Supply Co.* (1989), 44 Ohio St. 3d 36, 45-46, 540 N.E.2d 1358, 1367. Accordingly, Defendant also is entitled to summary judgment on Plaintiffs' claim for "punitive damages."

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to strike (Doc. 48) is **GRANTED IN PART** (as to the Schockman report) and **DENIED IN PART** (as to the Claytor report); and Defendant's motion for partial summary judgment (Doc. 34) on Plaintiffs' claims for "bad faith" (Complaint ¶¶ 26-29) and "punitive damages" (Complaint ¶¶ 30-31) is **GRANTED**.

**IT IS SO ORDERED**.

Date: 2/12/2015                                     *s/ Timothy S. Black*
                                                    Timothy S. Black
                                                    United States District Judge